**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

BONNIE W. DAVID
MAGISTRATE IN CHANCERY

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DE 19947

Date Submitted:  November 6, 2023
Final Report:  November 7, 2023

Daniel Jaiyong An
27 Calle Orta 3D APT
Cond Los Nardos A
San Juan, Puerto Rico  00907

A. Thompson Bayliss, Esquire
Ben Lucy, Esquire
Abrams & Bayliss LLP
20 Montchanin Road, Suite 200
Wilmington, Delaware  19807

>     RE:   *Daniel Jaiyong An v. Archblock, Inc.*,
>           C.A. No. 2023-0754-BWD

Dear Counsel and Mr. An:

This final report addresses defendant Archblock, Inc.'s ("Archblock" or the "Company") motion to dismiss plaintiff Daniel Jaiyong An's ("Plaintiff") Verified Complaint to Compel Inspection of Books and Record[s] Under 8 *Del. C.* [§] 220 (the "220 Complaint").  For the reasons explained below, I recommend that the motion to dismiss be granted and the 220 Complaint be dismissed with prejudice.

## I.    BACKGROUND

The following facts are drawn from the 220 Complaint, giving Plaintiff the benefit of all reasonable inferences.  I take judicial notice of filings in a related proceeding before this Court captioned *An v. Cosman*, C.A. No. 2023-0715-LWW (Del. Ch. July 14, 2023) (the "Plenary Action").  *See Baca v. Insight Enters., Inc*.,

2010 WL 2219715, at *1 (Del. Ch. June 3, 2010) (taking judicial notice of filings in a parallel proceeding).

### A.     The Demand

Archblock is a Delaware corporation that develops blockchain software.  Pl.'s Verified Compl. to Compel Inspection of Books and Record[s] Under 8 *Del. C.* 220 [hereinafter, "220 Compl."] ¶ 3, Dkt. 1.  Plaintiff is the former CEO and a current stockholder of the Company.  *Id.* ¶ 2.

On June 29, 2023, the holders of a majority of the issued and outstanding shares of the Company's stock acted by written consent to approve the adoption of an Agreement and Plan of Merger through which the Company would change its domicile from Delaware to Switzerland (the "Redomestication Transaction").  *Id.* ¶¶ 4, 6.

On July 1, 2023, Plaintiff sent a letter to the Company demanding books and records pursuant to Section 220 of the Delaware General Corporation Law (the "Demand").  220 Compl., Ex. 1 [hereinafter, "Demand"].  The Demand asserts that "[t]he Company has provided scant information about the [Redomestication Transaction], its purpose, or the economic terms for shareholders of the surviving company."  *Id*. at 1.  Accordingly, the Demand explains:

> In addition to requesting the mandatory information and stockholders meeting date as required under the DGCL, [Plaintiff] also seek[s] to investigate the events leading up to the approval and decision to remove the domicile of the Company from Delaware and the United States to Switzerland. This rash decision appears on its face to be related either to (1) self-dealing motives of the controllers of the Company or (2) mitigation of blatant violations of United States laws. These are all serious issues in need of immediate investigation and give rise to colorable claims of breach of fiduciary duties against the directors and officers of the Company.

*Id*. Separately, the Demand reiterates:

> [Plaintiff] has serious concerns about the Company's decision to remove the domicile of the Company from Delaware to Switzerland without any justification. Additionally, these actions raise serious questions whether the current officers and directors of the Company have engaged in knowing violations of United States law prompting this sudden attempt to remove the Company's assets from the United States to Switzerland.

*Id*. at 2-3. The Demand identifies fourteen categories of information that Plaintiff seeks to inspect to accomplish his investigation purpose. *See id*. at 2.

On July 7, 2023, the Company, through counsel, sent Plaintiff a letter rejecting the Demand. 220 Compl., Ex. 2 at 3.

### B.     The Plenary Action

Two weeks after sending the Demand, on July 14, 2023, Plaintiff filed a Verified Complaint (the "Plenary Complaint"), accompanied by a Motion to Expedite and a Motion for Temporary Restraining Order, in the Plenary Action. The Plenary Complaint alleges ten counts, including claims for breach of fiduciary duty,

breach of contract, waste, and "oppression of minority shareholder," among others. Throughout 58 pages and 313 numbered paragraphs, the Plenary Complaint describes the founding of the Company, alleged securities law violations committed by the Company's directors and officers, Plaintiff's purportedly improper removal as CEO and a director in July 2020, and an allegedly improper asset sale in September 2020. Additionally, the Plenary Complaint challenges wrongdoing in connection with the Redomestication Transaction, alleging:

- "[Plaintiff] is seeking declaratory and injunctive relief related to a proposed merger by [Archblock] designed to redomicile the company to Switzerland. [Plaintiff] alleges this merger attempt in June 2023 is an effort by the Defendants to further entrench their control and ownership at the expense of [Plaintiff's] shareholder rights. The complaint seeks to enjoin and declare the proposed merger invalid as a violation of Delaware law and [Archblock's] charter." Pl.'s Verified Compl., C.A. No. 2023-0715-LWW [hereinafter, "Plenary Compl."] ¶¶ 16-18, Dkt. 1.

- "The above merger attempt—which [Plaintiff] was notified of less than a month ago—to domicile the company and all assets to Switzerland has prompted [Plaintiff] to file this complaint now in Delaware." *Id.* ¶ 174.

- "As Directors and Officers of the Company, the Individual Directors owed duties of loyalty to the stockholders of the Company, including Plaintiff. The Individual Defendants breached their duties by approving the merger agreement to benefit themselves and without any justification. The Individual Defendants failed to follow any of the prescribed rules under Delaware law, the Company's Certificate of Incorporation, or the Company's Bylaws for the approval of such a merger in a rush to enrich themselves." *Id.* ¶¶ 283-284.

- "The Company and the Individual Defendants have failed to follow the prescriptions to approve and merge the Company under Delaware, the Company's Certificate of Incorporation, and the Company's Bylaws. . . . Plaintiff is entitled to a Declaration that the proposed merger contravenes the law and should be enjoined from consummation." *Id.* ¶¶ 286, 288.

Through the accompanying Motion for Temporary Restraining Order, Plaintiff sought to enjoin the closing of the Redomestication Transaction.

The Plenary Action is assigned to Vice Chancellor Will. On July 21, 2023, Vice Chancellor Will held a hearing on the Motion to Expedite and the Motion for Temporary Restraining Order. At the conclusion of the hearing, the Court denied the motions, explaining that Plaintiff had not raised a colorable challenge to the Redomestication Transaction, and, even if the Court were to overlook the conclusory nature of Plaintiff's allegations, Plaintiff failed to demonstrate that he faced imminent, irreparable harm in the absence of injunctive relief, or that the balance of the equities favored enjoining the transaction. *An v. Cosman*, C.A. No. 2023-0715-LWW, at 49-56 (Del. Ch. July 21, 2023) (TRANSCRIPT).

### C. The 220 Action

On July 25, 2023, Plaintiff filed a letter in the Plenary Action, which the Court interpreted as a request for reargument. That request was denied on August 4, 2023. *See An v. Cosman*, C.A. No. 2023-0715-LWW (Del. Ch. Aug. 4, 2023) (ORDER).

The same day Plaintiff filed his request for reargument, Plaintiff initiated this action through the filing of the 220 Complaint, which seeks an order compelling Archblock to produce the books and records identified in the Demand.

On September 11, 2023, Archblock moved to dismiss the 220 Complaint (the "Motion to Dismiss"),[1] and on September 27, 2023, filed an Opening Brief in Support of its Motion to Dismiss Plaintiff's Verified Complaint. Def. Archblock, Inc.'s Op. Br. In Supp. Of Its Mot. To Dismiss Pl.'s Verified Compl. [hereinafter, "OB"], Dkt. 10. On October 23, 2023, Plaintiff filed a Brief in Opposition to Defendant's Motion to Dismiss. Pl.'s Br. In Opp'n To Def.'s Mot. To Dismiss [hereinafter, "AB"], Dkt. 17. Archblock filed a Reply Brief in Further Support of its Motion to Dismiss Plaintiff's Verified Complaint on November 6, 2023. Def. Archblock, Inc.'s Reply In Further Supp. Of Its Mot. To Dismiss Pl.'s Verified Compl. [hereinafter, "RB"], Dkt. 18. Oral argument on the Motion to Dismiss is unnecessary.

---

[1] Plaintiff complains that the Motion to Dismiss was untimely. *See* AB at 11-12. However, Plaintiff did not move for default judgment, and even if he had, default is inappropriate given Archblock's eventual appearance and the lack of prejudice caused by its minor delay. *See, e.g.*, *Hall v. Coupe*, 2015 WL 832437, at *1 (Del. Ch. Feb. 25, 2015) ("[L]itigation on the merits instead of entry of a default judgment is the preferred method for resolving a case.").

## II.    ANALYSIS

Archblock has moved to dismiss the 220 Complaint under Court of Chancery Rule 12(b)(6) for failure to state a claim upon which relief may be granted.  When reviewing a motion to dismiss under Rule 12(b)(6), Delaware courts "(1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as 'well pleaded' if they give the opposing party notice of the claim, [and] (3) draw all reasonable inferences in favor of the non-moving party." *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011).  "[T]he governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'" *Id*. at 537.

"To inspect books and records under Section 220, a plaintiff must establish by a preponderance of the evidence that the plaintiff is a stockholder, has complied with the statutory form and manner requirements for making a demand, and has a proper purpose for conducting the inspection." *Pettry v. Gilead Scis., Inc.*, 2020 WL 6870461, at *9 (Del. Ch. Nov. 24, 2020).  "If a stockholder meets these requirements, the stockholder must then establish 'that each category of the books and records requested is essential and sufficient to the stockholder's stated purpose.'"  *Id*. (citations omitted).

Archblock contends that the 220 Complaint must be dismissed as a matter of law because Plaintiff has already filed a plenary action challenging the same purported wrongdoing that he seeks to investigate through the Demand. "Delaware courts have recognized that a stockholder who files a plenary action asserting claims of mismanagement undercuts his alleged need to obtain documents under Section 220 to investigate the same alleged acts of mismanagement." *Schnatter v. Papa John's Int'l, Inc.*, 2019 WL 194634, at *11 (Del. Ch. Jan. 15, 2019), *abrogated on other grounds by Tiger v. Boast Apparel, Inc.*, 214 A.3d 933 (Del. 2019). When a stockholder files a plenary action challenging the same issues he seeks to investigate through his demand, he "effectively concede[s] that the books and records he seeks are not necessary or essential to his stated purpose of investigating mismanagement or wrongdoing . . . ." *Bizzari v. Suburban Waste Servs., Inc.*, 2016 WL 4540292, at *6 (Del. Ch. Aug. 30, 2016).[2]  Moreover, "once a stockholder commences plenary

---

[2] *See also, e.g.*, *King v. VeriFone Hldgs., Inc.*, 12 A.3d 1140, 1148 (Del. 2011) (acknowledging that dismissal of a later-filed Section 220 action was proper when the "stockholder-plaintiff's plenary derivative complaint was still pending and the plenary court had not granted the plaintiff leave to amend"); *CHC Invs., LLC v. FirstSun Cap. Bancorp*, 2019 WL 328414, at *5 (Del. Ch. Jan. 24, 2019) (recognizing that, absent "special circumstances, the problems inherent in parallel plenary and Section 220 actions defeat [a plaintiff's] purpose for inspection"); *Cent. Laborers Pension Fund v. News Corp.*, 2011 WL 6224538, at *2 (Del. Ch. Nov. 30, 2011) (concluding that a stockholder was "unable to tender a proper purpose for pursuing its efforts to inspect" books and records because its "currently-pending derivative action necessarily reflect[ed] its view that it had sufficient grounds for alleging both demand futility and its substantive claims without the

litigation, discovery rules dictate what information relevant to its claims the stockholder may receive and when the stockholder may receive that information. Using Section 220 inspections to investigate pending plenary claims undermines well-established discovery law." *CHC Invs., LLC*, 2019 WL 328414, at *2.[3]

Plaintiff raises several arguments in opposition to the Motion to Dismiss. None succeed.

First, Plaintiff contends "there is significant difference between the purpose and the requested documents in the Section 220 demand and action and the Breach

---

need for the assistance afforded by Section 220"), *aff'd*, 45 A.3d 139 (Del. 2012); *Baca*, 2010 WL 2219715, at *4 ("[A] stockholder does not act with a proper purpose when the stockholder attempts to use Section 220 to investigate matters that the same stockholder already put at issue in a plenary derivative action."); *Taubenfeld v. Marriott Int'l, Inc.*, 2003 WL 22682323, at *3 (Del. Ch. Oct. 28, 2003) (explaining that filing a derivative action "was a certification under Rule 11 that the plaintiffs had enough information to support their allegations").

[3] *See also Amalgamated Bank v. NetApp, Inc.*, 2012 WL 379908, at *7 (Del. Ch. Feb. 6, 2012) (explaining that Section 220 cannot be used as "a device for parallel discovery to be pursued in two jurisdictions"); *Cent. Laborers Pension Fund*, 2011 WL 6224538, at *1 ("Section 220 was not adopted as a substitute for litigation discovery . . . ."), *aff'd*, 45 A.3d 139 (Del. 2012); *Romero v. Career Educ. Corp.*, 2005 WL 3112001, at *3 (Del. Ch. Nov. 4, 2005) ("Plaintiff is using this § 220 action to circumvent the stay of discovery in the federal securities litigation, and therefore lacks a proper purpose."); *Beiser v. PMC-Sierra, Inc.*, 2009 WL 483321, at *3 (Del. Ch. Feb. 26, 2009) (same); *W. Coast Mgmt. & Cap., LLC v. Carrier Access Corp.*, 914 A.2d 636, 645 (Del. Ch. 2006) ("When, in dismissing on demand excusal grounds, another court has denied discovery and leave to amend, it would undermine that decision for this court to permit the same plaintiff to pursue a section 220 action solely targeted at gaining information to relitigate that prior determination. [The plaintiff's] purpose in this circumstance cannot be proper.").

of Contract and Fiduciary Duty claims in the [Plenary] [A]ction."[4]  AB at 4.  A review of the Demand and the Plenary Complaint demonstrates otherwise.  The Demand asserts one purpose: to investigate possible wrongdoing in connection with the Redomestication Transaction.  Demand at 2-3.  The Plenary Complaint likewise alleges wrongdoing in connection with the Redomestication Transaction—it states that the Redomestication Transaction "prompted [Plaintiff] to file this complaint"; alleges that the transaction "is an effort by the Defendants to further entrench their control and ownership at the expense of [Plaintiff's] shareholder rights" and that "[t]he Individual Defendants breached their duties by approving the merger agreement"; and seeks "a Declaration that the [Redomestication Transaction] contravenes the law and should be enjoined from consummation."  Plenary Compl. ¶¶ 16-18, 171-174, 283, 288.  In other words, the Plenary Complaint challenges the precise wrongdoing that Plaintiff seeks to investigate through the Demand.

Next, Plaintiff points out that the 220 Complaint identifies additional proper purposes for inspection, including the valuation of Plaintiff's shares.  220 Compl.

---

[4] To support this argument, Plaintiff cites the Delaware Supreme Court's decision in *KT4 Partners LLC v. Palantir Technologies Inc.*, 203 A.3d 738 (Del. 2019).  *See* AB at 4.  The facts of that case are not analogous—in *KT4*, "there was no prior litigation against [the company] in Delaware related to the purposes [in the demand] that the Court of Chancery found proper."  *Id*. at 762.  Nor do the holdings in that case address the issues presented here.

¶ 16. The Demand itself does not include that purpose, however,[5] and Plaintiff may not expand his Demand through litigation. *See Grimm v. Stem, Inc.*, 2014 WL 5319597, at \*1, n.3 (Del. Ch. Oct. 13, 2014) ("During oral argument, [plaintiff] articulated a new purpose for inspection: valuation of his stock in [the company]. . . . Because this purpose was not stated in the Demand, I declined to consider it in resolving [plaintiff]'s summary judgment motion.").[6]

Finally, Plaintiff argues this action presents "special circumstances" that militate against dismissal. This Court has acknowledged that, "[d]espite problems inherent in the 'sue first, ask questions later' sequence, in 'special circumstances,'

---

[5] The Demand seeks valuation information but does not identify valuation as a purpose for making the Demand. *See* Demand at 1 ("In addition to requesting the mandatory information and stockholders meeting date as required under the DGCL, I also seek to investigate the events leading up to the approval and decision to remove the domicile of the Company from Delaware and the United States to Switzerland."); *id*. at 2-3 (stating, under heading "Purpose," that "[t]he Shareholder has serious concerns about the Company's decision to remove the domicile of the Company from Delaware to Switzerland without any justification. Additionally, these actions raise serious questions whether the current officers and directors of the Company have engaged in knowing violations of United States law prompting this sudden attempt to remove the Company's assets from the United States to Switzerland"); *see also id*. at 2 (requesting "[d]ocuments evidencing the valuation and/or the fairness of the valuation of the Company's shares in the new Swiss company").

[6] *See also, e.g.*, *Fuchs Fam. Tr. v. Parker Drilling Co.*, 2015 WL 1036106, at \*4 (Del. Ch. Mar. 4, 2015) ("Strict adherence to the section 220 procedural requirements for making an inspection demand protects the right of the corporation to receive and consider a demand in proper form before litigation is initiated." (citation and internal quotation marks omitted)).

Delaware courts have enforced a stockholder's Section 220 rights notwithstanding the stockholder's pending plenary complaint." *CHC Invs., LLC*, 2019 WL 328414, at *3 (citations omitted). In *Khanna v. Covad Communications Group, Inc.*, for example, a stockholder plaintiff filed suit to enforce his inspection rights under Section 220, then one month later, brought a class and derivative action out of concern that his claims would become time barred. 2004 WL 187274, at *3 (Del. Ch. Jan. 23, 2004). Vice Chancellor Noble concluded that the plaintiff had not waived his right to pursue his demand, explaining that "the overlap of the Section 220 action and the Derivative Action [had been] attributable to [the defendant's] failure to comply with its obligations under Section 220 . . . ." *Id*. at *4.

Plaintiff contends that, like in *Khanna*, "[i]mpending statute of limitations or other events implicating plaintiff's rights" justify Plaintiff's parallel suits here. AB at 7. But the limitations period on claims arising from the Redomestication Transaction, which was approved on June 29, 2023, is not close to expiring. Moreover, as the Court explained in *CHC*, "*Khanna* is limited to circumstances in which timing pressures are caused by the defendant or, at least, not caused by the plaintiff." 2019 WL 328414, at *3. If Plaintiff means to argue that limitations

pressures on his other claims justify parallel proceedings, he does not adequately allege that any such timing pressures are of Archblock's, and not his own, making.[7]

Plaintiff could have filed suit to enforce the Demand, but chose, instead, to pursue plenary litigation to seek to enjoin the transaction. Having committed to that course, Plaintiff cannot use Section 220 to circumvent the discovery process in the Plenary Action. That does not mean Plaintiff is without a remedy; he can pursue discovery in the Plenary Action, if and when appropriate.

## III.   CONCLUSION

For the reasons explained above, I recommend that the Motion to Dismiss be granted and the 220 Complaint be dismissed with prejudice. This is a final report

---

[7] In *CHC*, the Court recognized another exception—articulated in *King v. VeriFone Holdings, Inc.*—where "a court has deemed the plenary complaint insufficient and permitted a stockholder to re-plead or amend." *CHC Invs., LLC*, 2019 WL 328414, at *4-5. Here, however, the Plenary Action has not been dismissed with leave to replead or amend; it remains pending. The *King* exception therefore does not apply.

Additionally, as the Court explained in *CHC*, "*Khanna* and *King* are distinguishable because both involved derivative claims that import policy considerations not implicated by" claims that are not brought derivatively or in a representative capacity. *Id.* at *5. Plaintiff's claims in the Plenary Action are brought on an individual basis, so the "special circumstances" identified in *Khanna* and *King* arguably do not apply at all.

pursuant to Court of Chancery Rule 144(d)(2), and exceptions may be filed within

three business days.[8]

Sincerely,

*/s/ Bonnie W. David*

Bonnie W. David
Magistrate in Chancery

cc:     All counsel of record (by File & ServeXpress)

---

[8] *See* Ct. Ch. R. 144(d)(2) ("In actions that are summary in nature or in which the Court has ordered expedited proceedings, any party taking exception shall file a notice of exceptions within **three days** of the date of the report.") (emphasis added).